# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

№ 17-CV-1715(JFB);

KEVIN WASHINGTON,

Petitioner,

VERSUS

T. TYNON, SUPERINTENDENT OF WASHINGTON CORRECTIONAL FACILITY,

Respondent.

**MEMORANDUM AND ORDER**
November 20, 2018

JOSEPH F. BIANCO, District Judge:

Kevin Washington ("Washington" or "petitioner"), proceeding *pro se*, petitions this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in state court. On October 23, 2013, petitioner entered a guilty plea to four counts of Robbery in the First Degree, in violation of New York Penal Law § 160.15(3) and one count of Petit Larceny, in violation of New York Penal Law § 155.25. Petitioner was thereafter sentenced to eight years of imprisonment as to the robbery charges, to run concurrently with one year as to the petit larceny charge, followed by five years of post-release supervision.

In the instant habeas action, petitioner challenges his conviction and sentence, arguing that his guilty plea is invalid, that his counsel rendered ineffective assistance on multiple grounds, and that his rights under the Equal Protection Clause of the Fourteenth Amendment have been violated. For the reasons discussed below, petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND AND PROCEDURAL HISTORY

A. Background

The following facts are adduced from the

petition (Pet., ECF No. 1)[1] and the underlying record.

On October 23, 2013, petitioner entered a guilty plea in the Supreme Court of Nassau County to four counts of Robbery in the First Degree, in violation of New York Penal Law § 160.15(3), a Class "B" violent felony, and one count of Petit Larceny, in violation of New York Penal Law § 155.25, a Class "A" misdemeanor. (*See* P. 2, 13.)[2]

At the outset of petitioner's guilty plea proceeding, the court ensured that he was competent to proceed, and the following exchange took place:

> The Court: Do you feel in good physical and mental health as you stand here today?
>
> The Defendant: Yes.
>
> The Court: Have you taken any alcohol or any drugs in the last twenty-four hours?
>
> The Defendant: No.
>
> The Court: Have you ever been treated, confined to a hospital for any mental illness?
>
> The Defendant: No.

(P. 4.) Further, petitioner stated that he was satisfied with his attorney's representation and had discussed the choice to enter the plea with counsel. (P. 4-5.) The Court reviewed the constitutional rights petitioner was forfeiting by pleading guilty. (P. 5.) Petitioner informed the court that he had not been threatened to plead guilty, and that other than the court's promise of a maximum term of eight years' imprisonment, no other promises had been made to coerce his guilty plea. (P. 6, 8-9.)

The petitioner admitted to committing robberies on the following dates: (1) June 27, 2012 in Uniondale, New York (*see* P. 9, Opp. 9, ECF No. 33); (2) August 16, 2012 in Baldwin, New York; (3) August 27, 2012 in Westbury, New York; and (4) September 11, 2012 in Hicksville, New York. (P. 9-11.) Petitioner stated that, during all of the robberies, he displayed a knife to individuals, and demanded and successfully obtained their money. (P. 9-11.) Additionally, petitioner admitted that on August 1, 2012, in East Meadow, New York, he took money from a gas station cash register without permission to do so, committing petit larceny. (P. 11-12.)

Satisfied with the allocution, the Court stated:

> Court is satisfied that the defendant understands the nature of the charges, the nature of the plea, the possible consequences of his plea, the defendant has discussed his legal rights with his attorney. Defendant understands he is waiving his Constitutional rights, the plea is voluntary and of his own free will. Court is further satisfied that the defendant has acknowledged his guilt and is willing to assume responsibility for it. By pleading guilty, the defendant has ensured prompt and certain punishment to himself without delay. The Court believes it is in the interest of justice to accept the plea from this defendant.

---

[1] The court uses the pagination assigned by the electronic case filing system when citing to case documents.

[2] Numbers in parentheses preceded by "P." refer to pages in the October 23, 2013 transcript of petitioner's guilty plea proceeding. (ECF No. 33-2.)

(P. 12-13.) Prior to adjourning for sentencing, defense counsel stated:

> Mr. Shanahan: Judge, there was a 730.30 exam which we were not opposing. The result was that he was competent. Neither party was asking for a hearing, but I believe we had to put that on the record.
>
> The Court: Okay.
>
> Mr. Shanahan: And we had to confirm the findings. I think the Court has to confirm it.
>
> The Court: All right. Then I'm confirming those findings.

(P. 14.)

Notable for the purpose of this petition, prior to petitioner's guilty plea, on May 23, 2013, defense counsel made an application to the court for an Article 730 exam due to "some of [petitioner's] background and some of [petitioner's] psychiatric history." (Adj. 2.)[3] In response to this request, on September 23, 2013, the Nassau County Department of Human Services issued a mental health report, pursuant to Article 730 of New York Criminal Procedure Law ("CPL"). (*See* Exam. Report, ECF No. 33-15.) According to this report, Allen Reichman, M.D., a qualified psychiatrist, and Anthony V. Satoro, Psy. D, a certified psychologist, examined petitioner to determine whether he was mentally fit to proceed. (*See id.* 2, 5.) Based on these examinations, the report concluded that petitioner "does not as a result of mental disease or defect lack the capacity to understand the proceedings against him or to assist in his defense." (*See id.* 2, 5.)

Petitioner was sentenced on April 24, 2014. At the sentencing hearing, the prosecution recommended a term of ten years' imprisonment. (S. 2.)[4] Subsequently, defense counsel argued for a lesser sentence of six or seven years, emphasizing that petitioner had a limited criminal history and that the crimes did not involve the use of physical violence. (S. 2-4.) Petitioner spoke on his own behalf, stating:

> First, I would like to apologize to the judge, to my family. Like Mr. Shanahan said, I was going through a divorce. I started seeing a psychologist. They started giving me medication, because this is something that is not in my character to have ever done at 40-something years old. Why I would start doing something like that in my right frame of mind? So I ask for forgiveness and I would even like to make restitution to these gas stations that I apparently robbed. I was not in my right mind. I don't remember half the stuff that I pled out to.

(S. 4.) In response to petitioner's statement, the court asked defense counsel if he was waiving an application to reopen the plea, to which counsel responded:

> No, Judge. I've had numerous conversations with him. There is no - - he understands what he did. He has a recollection of what he did, although he feels that he may not have been in the right frame of mind.

---

[3] Numbers in parentheses preceded by "Adj." refer to the pages in the May 23, 2013 adjournment of petitioner's state court case. (ECF No. 33-1.)

[4] Numbers in parentheses preceded by "S." refer to pages in the April 24, 2014 transcript of petitioner's sentencing proceeding. (ECF No. 33-3.)

3

(S. 4-5.) Defense counsel indicated that he was "consenting to let the plea stand." (S. 5.) The Court then imposed a sentence of eight years of incarceration followed by five years of post-release supervision as to the robbery charges, to run concurrently with one year of incarceration as to the petit larceny charge. (S. 5-6.)

B. Procedural History

1. Direct Appeal

On May 1, 2015, petitioner appealed to the Second Department of the New York State Appellate Division. On direct appeal, petitioner argued that his guilty plea was invalid as the trial court was aware of petitioner's "documented history of mental illness" and failed to "conduct a sufficient inquiry [into his mental health] prior to the entry of the guilty plea." (*See* App. Div. Br. 16-23, ECF No. 33-4.)

On December 16, 2015, the Second Department affirmed the trial court's judgment of conviction and sentence, as petitioner's contention that his plea was not knowing and voluntary because the plea court did not inquire into his mental capacity was both "unpreserved for appellate review" and because "nothing in the record indicate[d] a need for the plea court to have conducted a full inquiry into the defendant's mental health before accepting his plea of guilty." *People v. Washington*, 134 A.D.3d 963, 963-64 (N.Y. App. Div. 2015). The Second Department emphasized that "[u]pon examination six weeks earlier by a psychiatrist and a psychologist, the defendant had been found fit to proceed in the criminal action, and the defendant's demeanor at the plea allocution and responses to the plea court's inquiries were appropriate." *Id.* at 964. Petitioner sought leave to appeal to the New York Court of Appeals, and leave to appeal was denied on May 17, 2016. *People v. Washington*, 27 N.Y.3d 1076 (N.Y. 2016).

2. First Section 440 Motion

On July 25, 2016, petitioner filed a *pro se* motion in Supreme Court of the State of New York, Nassau County, to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10. (*See* Section 440 Mot., ECF No. 33-10.) In this motion, petitioner argued that he received ineffective assistance of counsel when his attorney failed to: (1) discuss his mental state and prescribed medications during his plea proceedings; (2) obtain a "proper diagnosis" of his condition "so a proper medical evaluation could [have been] given to [the trial court]"; (3) provide petitioner's "doctor's notes and letters" to the trial court; (4) inform the trial court about the side effects of petitioner's prescribed medications; and (5) tell the trial court that petitioner had "no criminal history in the system before taking the medication" and advocate for reduced charges because the relevant charges did not involve violent acts. (Section 440 Mot. 4.)

The Supreme Court of the State of New York, Nassau County denied petitioner's Section 440.10 motion as procedurally barred and without merit, stating that, "the arguments raised on appeal and repeat[ed] in his present motion were rejected on the merits by the Appellate Division when [the] court concluded that defendant's plea was voluntary" and "such allegations are based upon defendant's unsubstantiated allegations of fact which are contradicted by the Court record." (Court Order Denying Section 440.10 Mot. 1, ECF No. 33-13.) Respondent asserts that petitioner did not seek leave to appeal the denial of his Section 440.10 motion. (Opp. 16.)

3. Second 440 Motion/Petition

## for State Habeas Relief

On March 2, 2017, petitioner filed a *pro se* motion in Supreme Court of the State of New York, Nassau County, again arguing for relief under Section 440.10, or in the alternative, for state habeas corpus relief. (*See* State Habeas Corpus Pet. 3-4, ECF No. 33-11.) Petitioner again claimed that his guilty plea was not voluntary due to his mental illness and that his guilty plea was coerced when his counsel informed him if he failed to plead guilty, he would receive a twenty-five year sentence. (*See id.* at 3.)

Additionally, petitioner claimed he was denied effective assistance of counsel when his attorney failed to: (1) tell the trial court about his lack of criminal history; (2) advocate for reduced charges because of a lack of violence during the criminal acts; and (3) inform the trial court about the side effects of his prescribed medication. (*See id.* at 4.) Further, petitioner stated that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated, and he provided an example of one female defendant with mental illness and drug addiction who received a lesser sentence than him for a robbery-related conviction. (*See id.*, Ex. A 8-10.)

On June 2, 2017, the Supreme Court of the State of New York, Nassau County denied this motion, first stating that "[u]pon review of defendant's second 440 motion, the Court concludes that in sum and substance defendant's arguments are not appropriate for habeas corpus relief." (Court Order Denying State Habeas Corpus Petition 1, ECF No. 33-14.) The Supreme Court of the State of New York, Nassau County found that all of petitioner's claims could have been raised on direct appeal or in petitioner's first Section 440 motion. (*See id.* at 2.) Additionally, the court found that "the voluntariness and ineffectiveness claims" were previously raised and denied, and thus were procedurally barred from further review. (*See id.*) The Supreme Court of the State of New York, Nassau County concluded that all petitioner's claims were without merit. (*See id.* at 3.)

4. The Instant Petition

On March 1, 2017, petitioner moved before this Court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (*See* Pet. 3-4.)[5] Petitioner again claims that he is entitled to habeas relief because his guilty plea was not knowing and voluntary based on his mental competence and coercive statements made by his trial attorney. (Pet. 3.) Additionally, petitioner contends that he received ineffective assistance of counsel when his attorney failed to: (1) inform the trial court about his lack of criminal history; (2) advocate for lesser charges because his criminal conduct did not involve violence; and (3) inform the trial court about the side effects of his prescribed medication. (Pet. 3-4.) Further, petitioner claims that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated because a female individual who was suffering from substance abuse issues and mental illness was convicted of armed robbery and received a jail sentence of one year, in contrast to petitioner's eight year sentence. (*See* Pet., Ex. A 2-4.)

On June 13, 2017, respondent filed a motion to dismiss the petition, arguing that this Court did not have jurisdiction to address petitioner's claims, as petitioner failed to fully exhaust the existing state court remedies

---

[5] The Court notes that petitioner's federal habeas corpus petition is identical to the post-conviction motion filed in state court on March 2, 2017.

5

by failing to seek leave to appeal the Appellate Division's denial of both Section 440.10 motions. (Resp. Motion to Dismiss 22-25, ECF No. 14.)[6]

On June 21, 2017, petitioner filed a motion to dismiss respondent's motion, raising the same arguments contained in the original petition for federal habeas relief and claiming that he properly exhausted his claims in state court by appealing to the Appellate Division. (*See* Pet. Motion to Dismiss 1-4, ECF No. 18.) Respondent filed a response on July 7, 2017, explaining that though petitioner claimed to have appealed to the Appellate Division during his state court proceedings, he did not appeal from the Appellate Division's denial of his post-conviction motions:

> In support of this claim [that petitioner appealed to the Appellate Division], petitioner attaches the cover page of respondent's brief submitted to the Appellate Division in opposition to petitioner's direct appeal from the judgment of conviction. It appears that petitioner has confused his judgment appeal with an application for leave to appeal from the denial of a post-judgment motion. In any event, respondent has no record of petitioner having sought leave to appeal the [Nassau County] Supreme Court's decisions dated December 7, 2016, and May 30, 2017.

(Resp. July 7, 2017 Letter, ECF No. 19.)[7]

On January 26, 2018, this Court ordered, in pertinent part, that respondent "shall (i) advise the Court of the status of any appeal of the Nassau County Supreme Court's order dated May 30, 2017 . . . and (ii) brief the merits of petitioner's instant petition for a writ of habeas corpus." (ECF No. 25.)

On April 27, 2018 respondent filed its brief in opposition to petitioner's federal habeas petition, including a discussion of the merits of the habeas petition. (*See* Opp.) In the opposition, respondent first contends that all of petitioner's claims are procedurally barred from review because: (1) petitioner failed to seek leave to appeal the Appellate Division's denial of his post-conviction motions; (2) petitioner's current claims were decided by the state court on independent and adequate state grounds; and (3) petitioner did not provide any justification for his procedural defaults. (*See* Opp. 25-32.) Respondent then addresses the merits of petitioner's claims, arguing that: (1) the "plea court's determination that petitioner was competent to plead guilty and did so knowingly, intelligently, and voluntarily was both objectively reasonable and in accord with clearly established federal law"; (2) that petitioner's various grounds of ineffective assistance of counsel are without merit; and (3) that petitioner's "proposal that he was

---

[6] Prior to respondent's motion to dismiss, petitioner submitted three documents: (1) Petitioner's April 10, 2017 Affidavit, ECF No. 9; (2) Petitioner's May 19, 2017 Affidavit, ECF No. 12; and (3) Petitioner's June 9, 2017 Letter, ECF No. 16; all of which have been reviewed by the Court. To the extent that the Court finds information provided in these documents relevant, it is already incorporated into the discussion of petitioner's habeas claims.

[7] On July 17, 2017, petitioner filed a letter with the Court, contending that he followed the appeal process as explained by former counsel and he "should not have had to keep on appealing to this Court because due process in this case is in violation of breaking the laws of this state and federal law of the Constitution of the United States from the beginning stages." (*See* Pet. July 17, 2017 Letter 2, ECF No. 20.) As discussed below, this assertion does not change the Court's determination regarding whether petitioner's claims are properly before this Court.

somehow denied his right to equal protection is equally baseless." (*See* Opp. 32-46.)[8]

II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. "Clearly established Federal law" means "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.*

AEDPA establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decisions applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required …

---

[8] From June 2017 through April 2018, petitioner filed nine additional documents: (1) Petitioner's July 17, 2017 Letter, ECF No. 20; (2) Petitioner's August 16, 2017 Letter, ECF No. 21; (3) Petitioner's October 23, 2017 Letter, ECF No. 22; (4) Petitioner's Supplemental Petition for Habeas Corpus Relief, January 16, 2018, ECF No. 24; (5) Petitioner's January 26, 2018 Motion for Declaratory Judgment, Preliminary Injunction and Temporary Restraining Order, ECF No. 26; (6) Petitioner's February 28, 2018 Affidavit, ECF No. 29; (7) Petitioner's March 12, 2018 Letter, ECF No. 30; (8) Petitioner's March 30, 2018 Letter, ECF No. 31; (9) Petitioner's April 13, 2018 Opposition to Respondent's Answer to Motion for Declaratory Judgment, ECF No. 32. The Court has reviewed all aforementioned documents. To the extent that the Court finds information provided in these documents relevant, it is incorporated into the discussion of petitioner's habeas claims. Additionally, the Court notes that petitioner's supplemental petition for habeas corpus relief raises identical claims as the original habeas petition, thus these claims are all addressed and denied by the Court. As set forth below, all of petitioner's claims for habeas relief are denied, rendering petitioner's outstanding motion for declaratory judgment moot.

the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id*. (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

### III. DISCUSSION

Petitioner claims that he is entitled to habeas relief because his guilty plea is invalid due to his mental illness and coercive conduct by his attorney. (*See* Pet. 3.) Further, petitioner contends that he is entitled to relief because he received ineffective assistance of counsel when his attorney failed to: (1) tell the trial court about his lack of criminal history; (2) seek reduced charges because his conduct did not involve violent acts; and (3) inform the court about the side effects of his prescribed medication. (Pet. 3-4.) Respondent argues that petitioner's claims are procedurally barred from federal review and without merit. (Opp. 25-46.) For the reasons set forth below, the Court finds that petitioner is not entitled to habeas relief.

#### A. Procedural Requirements

##### 1. Exhaustion

As a threshold matter, a district court shall not review a habeas petition unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Although a state prisoner need not petition for certiorari to the United States Supreme Court to exhaust his claims, *see Lawrence v. Florida*, 549 U.S. 327, 333 (2007), petitioner must fairly present his federal constitutional claims to the highest state court having jurisdiction over them, *see Daye v. Attorney Gen. of N.Y.*, 696 F.2d 186, 191 n.3 (2d Cir. 1982) (en banc). Exhaustion of state remedies requires that a petitioner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quotation marks omitted) (alteration in original)).

However, "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Picard*, 404 U.S. at 275-76. On the contrary, to provide the State with the necessary "opportunity," the prisoner must "fairly present" his claims in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and "giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Duncan,* 513 U.S. at 365-66. "A petitioner has 'fairly presented' his claim only if he has 'informed the state court of both the factual and legal premises of the claim he asserts in federal court.'" *Jones v. Keane*, 329 F.3d 290, 294-95 (2d Cir. 2003) (quoting *Dorsey v. Kelly,* 112 F.3d 50, 52 (2d Cir. 1997)). "Specifically, [petitioner] must have set forth in state court all of the essential factual allegations asserted in his federal petition; if material factual allegations were omitted, the state court has not had a fair opportunity to rule on the claim." *Daye,* 696 F.2d at 191-92 (citing *Picard*, 404 U.S. at 276; *United States ex rel. Cleveland v. Casscles*, 479 F.2d 15, 19-20 (2d Cir. 1973)). To that end, "[t]he chief purposes of the

exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Id*. at 192 (footnote omitted).

## 2. State Procedural Requirements

Like the failure to exhaust a claim, the failure to satisfy the state's procedural requirements deprives the state courts of an opportunity to address the federal constitutional or statutory issues in a petitioner's claim. *See Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). "[A] claim is procedurally defaulted for the purposes of federal habeas review where 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997) (quoting *Coleman*, 501 U.S. at 735) (emphasis omitted).

Where the petitioner "can no longer obtain state-court review of his present claims on account of his procedural default, those claims are now to be deemed exhausted." *DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004) (citing *Harris v. Reed,* 489 U.S. 255, 263 n.9 (1989); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991)). Therefore, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.'" *Keane*, 118 F.3d at 139 (quoting *Grey*, 933 F.2d at 120).

However, "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted [on] those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

The procedural bar rule in the review of applications for writs of habeas corpus is based on the comity and respect that state judgments must be accorded. *See House v. Bell*, 547 U.S. 518, 536 (2006). Petitioner's federal claims also may be procedurally barred from habeas corpus review if they were decided at the state level on adequate and independent grounds. *See Coleman*, 501 U.S. at 729-33.

Once it is determined that a claim is procedurally barred under state rules, a federal court may still review such a claim on its merits if the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Id*. at 750 (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

## 3. Application

The Court first considers whether petitioner adequately exhausted his claims regarding his guilty plea, specifically, that his guilty plea is invalid as (1) he was not mentally fit to enter a guilty plea, and (2) he was coerced into entering a guilty plea by his attorney's conduct. (*See* Pet. at 3-4.)

Petitioner first challenged the validity of his guilty plea on direct appeal, claiming that

it should be invalidated due to his mental fitness and the failure of the trial court to make inquiries into his mental health. (*See* App. Div. Br. 16-24.) In petitioner's direct appeal, he did not pursue the theory that his guilty plea was coerced by his attorney's conduct. The Appellate Division denied petitioner's allegations regarding his guilty plea, finding the claims to be "unpreserved for appellate review" and that his guilty plea was knowing and voluntary. *Washington*, 134 A.D.3d at 963-64. Subsequently, the New York State Court of Appeals denied petitioner's leave to appeal this decision. *See Washington*, 27 N.Y.3d at 1076. Though petitioner did not specifically attack the voluntary and knowing nature of his guilty plea in the first Section 440.10 motion, he did raise issues with the validity of his guilty plea in his combined state habeas corpus petition and second Section 440.10 motion. (*See* State Habeas Corpus Petition 3-4.) There, petitioner made the identical arguments contained in the instant federal habeas petition: that his guilty plea is invalid (1) due to his mental state at the time he entered into the plea and (2) because it was coerced by his attorney's conduct. (*See* Pet 3-4; State Habeas Corpus Petition 3-4.) The Supreme Court of the State of New York, Nassau County found that, as the Appellate Division reviewed the guilty plea in its entirety and deemed it voluntary, the claims were "procedurally barred and meritless." (*See* Court Order Denying State Habeas Petition at 2-3.) Petitioner failed to seek leave to appeal this decision.

Petitioner's ineffective assistance of counsel claims, though not raised on direct appeal, were raised in petitioner's first Section 440.10 motion. (*See* Section 440.10 Mot. 4.) The Supreme Court of the State of New York, Nassau County reviewed petitioner's claims and denied the motion in its entirety by summarily finding that petitioner's "allegations are based upon…unsubstantiated allegations of fact which are contradicted by the Court record." (Court Order Denying Section 440.10 Mot. 1.) Instead of seeking leave to appeal this denial, petitioner filed another Section 440.10 motion that essentially reworded his claims of ineffective assistance of counsel. (*See* State Habeas Corpus Petition at 3-4.) The Supreme Court of the State of New York, Nassau County again rejected petitioner's ineffective assistance of counsel claims, denying the claims as they were: (1) "not appropriate for habeas corpus relief," (2) procedurally barred by the denial of petitioner's first Section 440.10 motion, and (3) entirely without merit. (*See* Court Order Denying State Habeas Corpus Petition 1-3.) Petitioner did not seek leave to appeal this denial and has now raised the identical ineffective assistance claims in the instant petition. (Pet. 3-4.)

Additionally, petitioner claims that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated. This claim is identically phrased in the instant federal habeas petition and petitioner's combined state habeas corpus petition and second Section 440.10 motion. (*See* Pet. 3-4; State Habeas Corpus Petition 8-10.) The Supreme Court of the State of New York, Nassau County acknowledged this claim, but did not address the claim in detail. (*See* Court Order Denying State Habeas Corpus Petition 1-3.) Instead, the court summarily denied all of petitioner's claims, concluding they were "procedurally barred and meritless." (*See id.* at 2-3.) Petitioner did not seek leave to appeal the Supreme Court of the State of New York, Nassau County's decisions.

It is well settled that "[t]he burden of proving exhaustion lies with the habeas petitioner." *Cartagena v. Corcoran*, No. 04-CV-4329(JS), 2009 WL 1406914, at *3

(E.D.N.Y. May 19, 2009). As discussed above, to adequately exhaust each claim, a petitioner "must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005). "A petitioner may satisfy the exhaustion requirement either through a full round of the state's appellate review process or through a full round of postconviction proceedings . . . [which] requires the use of any discretionary appeal procedures that are an established part of the state's appellate or collateral review process." *Warren v. Goord*, No. 06-CV-1423(RRM), 2013 WL 1310465, at *11 (E.D.N.Y. Mar. 28, 2013) (internal quotation marks and citations omitted).

The only claim that petitioner may have adequately exhausted is his claim that his plea is invalid due to his mental competence. Liberally construing this claim, it appears to have concluded a "full round of the state's appellate review process," as it was raised on appeal to the Appellate Division and in his petition to the New York State Court of Appeals. *Id.* However, this claim is barred from review because the Appellate Division relied on a firmly established procedural rule to deny the claim. The Appellate Division ruled that petitioner's "contention that his plea of guilty was not knowing and voluntary because the plea court failed to inquire into his mental capacity at the time of the plea allocution is unpreserved for appellate review." *Washington*, 134 A.D.3d at 963. It is well settled that a statement that a claim was "unpreserved" is sufficient to establish that the state court was relying on a procedural bar as an independent ground in disposing of the issue, even if the state court also reaches the merits of the claim. *See Figueroa v. Greiner*, No. 02 Civ. 5444(DAB)(GWG), 2005 WL 249001, at *8 (S.D.N.Y. Feb. 3, 2005); *Green*, 414 F.3d at 294 ("[E]ven when a state court says that a claim is 'not preserved for appellate review' but then rules 'in any event' on the merits, such a claim is procedurally defaulted.") (quoting *Glenn v. Bartlett*, 98 F.3d 721, 725 (2d Cir. 1996))

As to all remaining claims, as petitioner failed to seek leave to appeal the denial of his first and second Section 440.10 motions, petitioner has not advised the highest state court of the "factual and legal premises" of his claims for federal habeas relief. *Galdamaz*, 394 F.3d at 73; *see also Anthoulis v. New York*, No. 11 Civ. 1908(BMC), 2012 WL 194978, at *3 (E.D.N.Y. Jan 23, 2012). Therefore, these claims are not properly exhausted. However, the district court may "deem [a] claim exhausted" when it finds that no available procedures remain in state court by which a petitioner can fully exhaust his claims. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Reyes*, 118 F.3d at 139). In the instant matter, the time for petitioner to seek leave to appeal the denial of either Section 440.10 motion has long expired. *See* N.Y. CPL § 460.10(4)(a) ("Within thirty days after service upon the defendant of a copy of the order sought to be appealed, the defendant must make application, pursuant to section 460.15, for a certificate granting leave to appeal to the intermediate appellate court.") Accordingly, "[s]ince the petitioner can no longer move timely for permission to appeal from the denial of his CPL § 440.10, his . . . claim[s] [are] procedurally barred, and [are] deemed exhausted. *Rodriguez v. Ercole*, No. 08 Civ. 2074(CM)(KNF), 2008 WL 4701043, at *3 (S.D.N.Y. Oct. 24, 2008); *see also Thomas v. Greiner*, 111 F. Supp. 2d 271, 276-77 (S.D.N.Y. 2000)

To overcome a procedural bar petitioner must "demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Petitioner has not provided a satisfactory explanation for his failure to properly adjudicate federal constitutional issues in state court, nor has petitioner demonstrated that denying habeas relief would result in a miscarriage of justice. *See id.*

As such, petitioner's claims are barred from review by this Court. However, out of an abundance of caution, the Court proceeds to evaluate the merits of all of petitioner's claims, finding them to be entirely without merit.

### C. The Merits

#### 1. Valid Guilty Plea

Petitioner claims that his guilty plea is invalid, as it was not knowing and voluntary due to his mental illness and because it was entered into as a result of coercive statements made by trial counsel. (Pet. 3.) Having reviewed this claim, the Court finds it meritless.

The well-established standard for determining the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford,* 400 U.S. 25, 31 (1970)). The Supreme Court has held that, under the Due Process Clause, a trial court can only accept a guilty plea which is "done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Adams,* 448 F.3d 492, 497 (2d Cir. 2006) (quoting *Bradshaw v. Stumpf,* 545 U.S. 175, 183 (2005)); *accord Godinez v. Moran,* 509 U.S. 389, 400 (1993). Normally, a guilty plea may not be collaterally attacked because it constitutes an admission as to all elements of the charged crime. *Salas v. United States,* 139 F.3d 322, 324 (2d Cir. 1998). However, a defendant may challenge a guilty plea on the ground that it was not made knowingly and voluntarily. *United States v. Simmons,* 164 F.3d 76, 79 (2d Cir. 1998). A conviction that is based upon an involuntary plea of guilty is inconsistent with due process of law and is subject to collateral attack by federal habeas corpus. *McMann v. Richardson,* 397 U.S. 759, 772 (1970).

"A plea is considered 'intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" *Manzullo v. New York*, No. 07 CV 744(SJF), 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)). Indeed, a "plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, mis-representation, or perhaps by promises that are by their nature improper." *Bousley v. United States*, 523 U.S. 614, 619 (1998) (internal alterations and citations omitted).

The Court has reviewed the record of petitioner's guilty plea and finds nothing in the record to support petitioner's claim that it was invalid. Instead, the Court agrees with the Appellate Division's determination that petitioner's guilty plea was knowing and voluntary. *See Washington*, 134 A.D.3d at 963-64.

Turning to the record of petitioner's guilty plea, petitioner confirmed under oath that he understood the consequences of entering a guilty plea, that he had not been threatened to plead guilty, and engaged in a detailed factual allocation. (P. 5-6, 9-12.) The court ensured that petitioner was competent to proceed, was in "good physical and mental health," had not taken any drugs or alcohol before his plea proceedings, and had not been "treated" or "confined to a hospital for any mental illness." (P. 3-4.) Further, the fact that petitioner was found mentally competent in an Article 730 examination was placed on the record. (P. 14.) Accordingly, the Court finds that petitioner's plea allocution demonstrates that petitioner understood the proceedings and freely entered the guilty plea.

Petitioner argues that his plea is invalid because the trial court ignored submissions from his personal physicians who found that he suffered from mental illness, and he attacks the validity of the Article 730 examination results that found him competent. (Pet. 3.) Petitioner states that the trial court "violate[d] [his] constitutional rights by ignoring the fact[] that [he] was and still suffers from…mental illness." (Pet. 3.) Though petitioner maintains that he suffers from mental illness, "[i]t is well-established that some degree of mental illness cannot be equated with incompetence to stand trial." *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986). This Court concludes that the trial court took appropriate steps to confirm that petitioner was mentally competent by ordering the Article 730 examination that confirmed he was competent to proceed, and nothing in the record of the plea proceedings suggests otherwise. Instead, the record of the guilty plea indicates that petitioner understood the proceedings in their entirety, including the rights he forfeited by entering the plea, as well as each of the charges to which he pleaded guilty.

Additionally, in light of the statements contained in the record, petitioner's conclusory allegations that he was coerced into pleading guilty do not provide a basis for habeas relief. A defendant's self-inculpatory "[solemn] declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, these statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citations omitted). Giving weight to petitioner's statements during his guilty plea proceeding, the Court finds the guilty plea valid and the state court's determination that the plea was knowing and voluntary was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, nor an unreasonable determination of the facts.

2. Ineffective Assistance of Counsel

Petitioner argues that he received ineffective assistance of counsel because his attorney failed to: (1) tell the trial court about his limited criminal history; (2) seek reduced charges because his crimes did not involve violence; and (3) inform the trial court about the side effects of his medication. (Pet. 3-4.) For the reasons set forth below, petitioner's ineffective assistance of counsel claims are without merit.

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but

13

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong of the *Strickland* standard requires a showing that counsel's performance was deficient. However, "[c]onstitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). "The performance inquiry examines the reasonableness of trial counsel's actions under all the circumstances," keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* (quoting *Rompilla v. Beard*, 545 U.S. 374, 408 (2005) (O'Connor, J., concurring)). "In assessing performance, [a court] must apply a 'heavy measure of deference to counsel's judgments.'" *Id.* (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable,'" *id.* at 558 (quoting *Strickland*, 466 U.S. at 690). Moreover, "'strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Strickland*, 466 U.S. at 690-91.

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[ ] confidence in the [proceeding's] outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "'[T]he question to be asked in assessing the prejudice from counsel's errors ... is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695). The party alleging ineffective assistance of counsel bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). "In the context of a guilty plea, *Strickland's* prejudice prong requires a defendant to demonstrate a reasonable probability that, 'but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Munson v. Rock*, 507 F. App'x. 53, 56 (2d Cir. 2013) (quoting *Hill*, 474 U.S. at 59).

Assuming, *arguendo*, that petitioner's claims of ineffective assistance of counsel are not procedurally barred, the Court agrees with the state court that petitioner has failed to demonstrate that counsel's performance was constitutionally defective. In addition, petitioner has failed to demonstrate prejudice resulting from the alleged deficiencies.

First, petitioner's allegation that the trial court was unaware of his criminal history is not supported by the evidence in the record. In contrast, as respondent points out, the trial court was in possession of a Presentence Investigation Report ("PSR"), which contained petitioner's criminal history, and

14

the PSR was taken into consideration by the court before the sentence was imposed. (*See* PSR, ECF No 33-19; *see also* S. at 5.) This conclusory allegation does not support a finding of ineffective assistance of counsel under *Strickland's* first prong.

With respect to petitioner's claims that he did not receive effective assistance because his counsel failed to inform the trial court about the side effects of his prescribed medication, this Court finds this claim vague and meritless. Petitioner does not provide this Court guidance as to what alleged side effects he suffered. Further, the record of the underlying guilty plea contradicts this assertion:

> The Court: Do you feel in good physical and mental health as you stand here today?
>
> The Defendant: Yes.
>
> The Court: Have you taken any alcohol or any drugs in the last twenty-four hours?
>
> The Defendant: No.

(P. at 4.)

Finally, considering petitioner's claim that counsel was constitutionally ineffective by failing to move for reduced charges because petitioner's conduct did not involve violent acts, the Court finds that petitioner has not established that his counsel erred. "[S]trategic choices of trial counsel are virtually unchallengeable in habeas corpus proceedings." *Bonneau v. Scully*, 86 Civ. 270(CSH), 1991 WL 90739, at *1 (S.D.N.Y. May 23, 1991), *aff'd*, 956 F.2d 1160 (2d Cir. 1992) (internal quotation marks and citations omitted). Considering the totality of the circumstances, counsel did not err by failing to seek reduced charges, as it was a sound strategic decision for counsel to instead negotiate a favorable plea disposition for petitioner. *See Hayes v. Tracy*, No. 03-CV-5237(SLT), 2005 WL 486912, at *6 (E.D.N.Y. Jan. 11, 2005).

Even if the Court found that counsel had erred in some way, petitioner has not shown that he was prejudiced by counsel's representation. As set forth above, for a petitioner to demonstrate prejudice, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A self-serving post-conviction statement, does not, standing alone, establish prejudice." *Hernandez v. Larkin*, No. 12 Civ. 8090(AJN)(SN), 2013 WL 4453316, at *12 (S.D.N.Y. Aug. 19, 2013). Here, there is no basis to believe that any motion for reduced charges would have been successful. In short, petitioner has failed to demonstrate any prejudice resulting from these alleged errors by counsel.

Accordingly, as petitioner cannot satisfy either of *Strickland's* prongs, his ineffective assistance of counsel claims must be denied.

### 3. Equal Protection

Petitioner claims that his sentence, violates the Equal Protection Clause of the Fourteenth Amendment. As the basis of this claim, petitioner provides an example of one female defendant convicted of armed robbery who had mental illness and substance abuse issues, and who received a lesser sentence than petitioner. Liberally construing this claim, it appears petitioner is arguing that a similarly situated individual received a lesser sentence based on gender. The Court finds this claim to be without merit.

In the instant matter, petitioner was facing four charges of Robbery in the First Degree, Class "B" violent felonies, each carrying a potential term of twenty-five years' imprisonment. *See* N.Y. Penal Law § 70.02(1)(a), (3)(a). Ultimately, petitioner was sentenced to eight years' imprisonment, a term considerably lower than what is permitted by statute.

It is well-established that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *McCalvin v. Senkowski*, 160 F. Supp. 2d 586, 589 (S.D.N.Y. 2001) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law."). Additionally, petitioner has failed to provide a showing of gender-based differences in jail sentences. Petitioner only provides a single reference to a female defendant who received a lesser sentence than he did. Therefore, because petitioner has not set forth a plausible Equal Protection claim and his sentence does not exceed what is permissible by law, he has not demonstrated that he is entitled to relief.

### III. CONCLUSION

For the foregoing reasons, this Court finds that the petitioner has demonstrated no basis for habeas relief under 28 U.S.C. § 2254. Accordingly, this petition for a writ of habeas corpus is denied in its entirety.

Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2). The Clerk of the Court shall close this case.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: November 20, 2018
       Central Islip, New York

\* \* \*

Petitioner is proceeding *pro se*, Washington Correctional Facility, Box 180, 72 Lock 11 Lane, Comstock, NY 12821. Respondent is represented by Ilisa T. Fleischer, Judith R. Sternberg, Nassau County District Attorney's Office, 262 Old Country Road, Mineola, NY 11501 and Daniel Stephen Bresnahan, Queens County District Attorney's Office, 125-01 Queens Boulevard, Kew Gardens, NY 11415.